The State ex rel. O'Bryan v. Koontz.

---

THE STATE *ex rel.* O'BRYAN v. KOONTZ *et al.*, *Plaintiffs in error.*

1. **Attachment**: OFFICER MAKING LEVY. A sheriff or constable having in his hands for service a writ of attachment must determine at his peril whether the personal property seized, or about to be seized, is that of the defendant in the writ.

2. ——— : ——— : BOND OF INDEMNITY. The officer cannot, on notice of claim of a third party to the property, demand of the plaintiff a bond of indemnity and in default of the plaintiff to furnish such bond refuse to execute the process, or having seized the property release it to the claimant.

3. **Instructions.** The Supreme Court will not reverse a judgment because an instruction assumes a fact which both parties sought to establish on the trial.

4. **Voluntary Conveyance**: SOLVENCY. The solvency required by the law as essential to protect a voluntary conveyance consists not only in the present ability of the debtor to pay his debts but in such a condition of his means that payment can be enforced by law.

5. **Constable**: BOND: ATTACHMENT LEVY. Where a constable improperly releases an attachment levy because, the property being claimed by a third person, the plaintiff refused to furnish an indemnifying bond and it appears that the defendant has no other property subject to levy, an action can be maintained on the official bond of the constable by the plaintiff without the latter's suing out an execution on his judgment.

*Appeal from Cooper Circuit Court.*—HON. E. L. EDWARDS, Judge.

AFFIRMED.

T. B. *Wright* and *Draffen & Williams* for plaintiffs in error.

The motion to strike out part of defendant's answer,

should have been overruled by the court. Where an officer has reason to doubt whether the goods upon which he is directed to levy an attachment are the property of the defendant in the writ, he may insist on being indemnified for any mistake he may make in taking goods not the property of the debtor, and upon the refusal of the plaintiff to give such indemnity, the officer may refuse to proceed with the levy. This was the common law and there is no statute abrogating it in this state. *Bond v. Ward*, 7 Mass. 123; *Sibley v. Brown*, 15 Maine 185; *Raulett v. Blodgett*, 17 N. H. 298; *Smith v. Cicotte*, 11 Mich. 383; *Chamberlain v. Beller*, 18 N. Y. 115; *Shriver v. Harbaugh*, 37 Pa. St. 399; Drake on Attachment (3rd. Ed.) § 189. (2) The court committed manifest error in declaring as a matter of law that because Charles Kaufman owed O'Bryan $80, therefore the gift of the mule to Fritz Kaufman was void. "A voluntary conveyance is not *per se* fraudulent as to creditors. Whether it be fraudulent is a question of fact for the jury." *Dygert v. Remerschnider*, 32 N. Y. 629; *Baker v. Welch*, 4 Mo. 484; *Eddy v. Baldwin*, 32 Mo. 369; *Gamble v. Johnson*, 9 Mo. 605. (3) Instructions numbered 8, 9 and 10 asked by defendants should have been given by the court.

*Cosgrove, Johnston & Pigott* for defendant in error.

(1) The motion to strike out part of defendant's answer was properly sustained by the court. After the attachment it was for the sheriff to determine at his peril whether or not the property belonged to the defendant in the writ. *State, etc., v. Fitzpatrick*, 64 Mo. 185; *State ex rel. v. Langdon*, 57 Mo. 353; *Wadsworth v. Walliker*, 45 Ia. 397; Cooley on Liability of Public Officers, p. 20; 2 Thompson on Negligence, p. 825; *Chamberlain v. Beller*, 18 N. Y. 115. As to the rule at common law in cases of attachment, see Gwynne on Sheriffs, 260; *Sanderson v. Baker*, 3 Wils. 316; *Curtis v. Patterson*, 8 Cow. 65;

*Bayley v. Bates*, 8 Johns. (N. Y.) 185. (2) The objection to plaintiff's fourth instruction is not well taken. (3) It was not necessary for plaintiff to go through the idle form. of having an execution issued and placed in the hands of a constable to be returned *nulla bona*, before bringing his suit for damages. The moment the constable refused to perform his duty and released the property which was looked to for the payment of plaintiff's debt, he became liable on his bond for the damages resulting therefrom, and the plaintiff was not required by law or reason to give the constable another opportunity to neglect his duty.

PHILIPS, C.—This is an action against the defendant, Koontz, as constable, on his official bond for wrongfully releasing property seized under a writ of attachment in favor of the relator, J. H. O'Bryan. The facts, briefly, are, that one Charles Kaufman owed said O'Bryan the sum of $80. Said Kaufman lived in the neighborhood of Tipton in Moniteau county. He seems to have sold out everything there save a horse and mule and two or three wagons, which horse and mule and a wagon, perhaps, he took with him to the town of Boonville in Cooper county. On his arrival there O'Bryan sued him on said debt, by attachment. The writ was placed in the hands of Koontz as constable of the township for service. O'Bryan pointed out said property, with other machinery, etc., connected with a butcher shop in Boonville, and directed the constable to levy on it; which the constable did. He removed the horse, mule and wagon to a livery stable in town. The property so seized was claimed by the sons and wife of Kaufman, respectively, who made claim thereto in writing and delivered the same to Koontz, who demanded of O'Bryan an indemnifying bond. On failure of O'Bryan to give such bond, the constable released the property to the claimants, and made return of the writ accordingly.

O'Bryan, after obtaining judgment in the justice's

court for his debt, brought this action against Koontz and his sureties on his official bond for damages.

The answer of defendants, after admitting the attachment proceedings, the seizure of the property under the writ as aforesaid, and the obtaining judgment by O'Bryan for his debt, denied that the property so seized belonged to said Charles Kaufman, or that it was lawfully subject to such seizure for the debt of said Charles. It further alleged that after plaintiff so obtained his judgment he took no further steps to enforce the same by having execution issued thereon against Kaufman, and levying on said property as he might have done. And it pleads specially that he was directed by plaintiff, on receipt of the writ of attachment, to levy the same on the property in question, which property was then in the possession of other parties, and being in doubt as to his right to seize the same, he demanded of the plaintiff an indemnifying bond; that plaintiff agreed to give the same, and thereupon he proceeded with the writ and seized the said property; that said claimants to said property thereupon gave him written notice of their claim and demanded restitution of their property, of which fact he informed plaintiff, and demanded that he protect defendant by a bond of indemnity. On plaintiff's failure and refusal to so do he released said property to said claimants, who he avers were the rightful owners.

To the portion of said answer setting up the demand for indemnity and plaintiff's refusal to give it, the plaintiff demurred, which the court sustained. The jury found for the plaintiff the amount of his debt, with interest and costs, for which the court entered judgment. Defendant, after an ineffectual motion for new trial, has brought the case here on writ of error.

I. The first and controlling question for determination, on this record, is the right of the constable, under the writ of attachment, on notice of claim of a third party to the property about to be seized or actually seized, to demand of the plaintiff in the action a bond of

indemnity, and, in default of the plaintiff to furnish such bond, to refuse to execute the process, or, having seized the property, to release it to the claimant. This is an important matter in practice, and does not appear to have been directly presented hitherto to this court. This is, perhaps, attributable to the fact that such right of the officer has not hitherto been supposed to exist in this state. The legislature has made specific provision in the case of executions issued on general judgment; but this does not apply to the proceeding by attachment. "Our statute provides no indemnity for the sheriff in such (attachment) cases." *State ex rel. v. Fitzpatrick*, 64 Mo. 185. If, therefore, the right of a constable, or sheriff, exists to demand the indemnity, it must rest on common law principles alone. By the common law there seem to have been two methods open to the officer, where he was in real doubt as to his right to seize and hold property when claimed by a third party. Being charged by the command of the writ to go forward, he was exposed to two hazards. If, under a writ to seize the goods of A, he should seize those of B, he was liable to an action of tort by B. If, on the mere apprehension that the goods belonged to B, he should return the writ *nulla bona*, he was liable on his bond to an action by the plaintiff in the writ for failure of official duty.

The first mode recognized by the common law practice for his protection, in such conjuncture, was to demand indemnity of the plaintiff for the seizure and sale, and of the claimant for releasing it. The constable in this case made demand of the plaintiff in the writ only. In the event both parties refused to give the indemnifying bond, the officer might make application to the court out of which the writ issued. It was discretionary with the court whether it would interfere; but the courts nearly always acted when satisfied of the *bona fides* of the officer's doubts, that they were based on reasonable grounds, and that he was not in collusion with the defendant in the writ. Unless the plaintiff would then

indemnify the officer, the court would postpone the
return day of the writ, until the officer had further time
for investigation, and if the reasonable grounds of appre-
hension continued the court would defer the return indefi-
nitely unless the plaintiff complied with such reasonable
request.

The other mode was for the officer, under a writ of
*proprietate probanda*, to impanel a jury to inquire into
the *prima facie* title to the property; and if the jury
found in favor of the claimant the officer might release to
him the property, and make return of *nulla bona*, unless
the plaintiff gave him the indemnity. This finding of
the jury would be a justification of the officer for making
a return of *nulla bona*. *Farr v. Newman*, 4 T. R. 633;
4 T. R. 648; *Wells v. Pickman*, 7 T. R. 177; see Gwynne
on Sheriffs, 260. But it was afterwards denied by the
English courts that such finding by the inquisition would
constitute matter of defence by the officer when sued for
a false return. *Latkaw v. Eamer*, 2 H. Blackstone 437;
*Glossop v. Pole*, 3 Maule & Sel. 176. The common law
practice of summoning a jury to pass on the probable
title to the property seized was early adopted by the
courts of New York, and has since been pursued there.
*Bayley v. Bates*, 8 John. 188; *VanCleef v. Fleet*, 15
John. 150; *Curtis et al. v. Patterson*, 8 Cow. 65. In this
last case the court say: "A plaintiff is never bound to
tender an indemnity until a jury have passed on the
question of property. A sheriff acts at his peril in mak-
ing a return of *nulla bona* under any other circumstances."

By later statutes in England (1 and 2 William 4 Ch.
58, sec. 6) the remedy by interpleader is provided by
which the officer may call the parties into court to have
them litigate the right of property between themselves.
It is remarkable that so important a matter in practice has
been neglected by our legislature. In many of the states
the right of the officer, under a writ of attachment in
case of assertion of ownership of property in a third per-
son, to demand of the plaintiff indemnity, where he is in

reasonable doubt of his right to proceed, seems to be recognized. *Bond v. Ward*, 7 Mass. 123; *Perkins v. Pitman*, 34 N. H. 261; *Sibley v. Brown*, 15 Maine 186; *Smith v. Cicotte*, 11 Mich. 383; 2 Greenl. Ev., § 585; Drake on Attach., § 189. But it would be difficult for any of these adjudications to be sustained on common law principles, to the extent that the sheriff or constable may demand as a matter of right the indemnity and refuse to act if not furnished. *Bosley v. Farquar*, 2 Blackf. 64–5; Freeman on Executions, sec. 275.

It would be a most unsafe rule to establish, to leave an attaching creditor so much at the caprice and timidity of a ministerial officer, to recognize his right not to act at all when he was in doubt. It would be a power in his hands for the unnecessary oppression of a poor litigant, whose rights might be unduly lost because of the exaction. It would open too wide the door for collusion with defaulting, dishonest debtors. And while it is true that the good faith and reasonableness of the officer's apprehension might be open to inquiry before a jury when sued for a false return, the advantages would be too much on the side of the officer in such inquiry to make it available to the plaintiff. His motives and fears are matters so much within his keeping that they would not be very accessible to assault. And in a struggle between the creditors and the officer, the latter very likely being aided in the contention by the debtor and the claimant, they would occupy quite unequal ground.

Between the two modes, that which required the officer, when in doubt after the refusal of the plaintiff to give the indemnifying bond, to apply to the court out of which the writ issued for direction and protection, is, in my opinion, far less liable to abuse than the other. This too is strongly approved by Freeman on Executions, sec. 275, and by the following adjudications: *Forniquet v. Tegarden*, 24 Miss. 96; *Jessop v. Brown*, 2 Gill & J. 404; *Spangler v. Com.*, 16 Serg. & R. 68; *Nagle v. Strohn*, 4 Watts 124, 125; *Com. v. Vandyke*, 57 Pa. St. 38, 39.

But this remedy would be wholly unavailing in a proceeding instituted in our justice's courts, as they have no common law jurisdiction. After careful consideration, we are of opinion that the rule at common law has not been adopted in the practice of our state; and that in the matter of attachment proceedings, it is a case of *casus omissus* of the legislature to provide for any such indemnity; or inasmuch as the legislature has made provision for the officer's indemnity in case of executions, it may be fairly implied that the legislature purposely omitted extending its provisions to writs of attachments; and, therefore, the officer charged with its execution must act or refuse to act at his peril. Even if either of the common law modes, in respect of proceedings under writs of execution, were recognized by this court, the constable pursued neither. He neither held the inquest nor brought the matter before the court issuing the writ, but took it upon himself to refuse to proceed on the pretension of the family of the defendant in the writ that they owned the property.

The case nearest approaching this question, found in our Supreme Court reports, is that of *State ex rel. v. Langdon*, 57 Mo. 355. It is true that in that case it does not appear that the constable informed the plaintiff in the writ of the claim set up to the property, or that he demanded indemnity, as in this case. But the language employed by Wagner, J., who delivered the opinion of the court, clearly evinces that in his judgment the officer, after making the seizure, released at his peril, for the reason that the property was then in the custody of the law, and that the claimant should resort to the interplea as provided by the statute in attachment proceedings. So Hough, J., in *State ex rel. v. Fitzpatrick*, 64 Mo. 189, says: "In all cases of seizure of personal property, under attachment, the officer is compelled to determine, at his peril, whether the property seized is that of the defendant in the writ. Our statute provides no indemnity for the sheriff in such cases."

OCTOBER TERM, 1884. 331

The State ex rel. O'Bryan v. Koontz.

The court in its instructions quite fairly submitted to the jury the question of the rightful ownership of the property, and told them that if they found the property at the time of the seizure belonged to another person than the defendant in the writ they should find the issue for defendant. By their verdict the jury found that a part of the property, at least, belonged to the defendant, Kaufman.

II. The defendants complain of the following instructions given by the court on behalf of the plaintiff: "Although you may believe that Charles Kaufman did give the mule, mentioned in the petition, to his son, Fritz Kaufman, yet, if such gift was made after the debt of the said Charles Kaufman to O'Bryan was contracted, it was void as to O'Bryan, and said mule, at the time of said levy, was subject to attachment or levy for O'Bryan's debt against Charles Kaufman."

"Although Charles Kaufman may have promised to give the mule, described in plaintiff's petition, to his son, Fritz Kaufman, yet such gift could not be consummated without an actual delivery of possession, and if you believe that such possession was not given until after the debt from Charles Kaufman to O'Bryan was contracted, you are instructed that said mule was subject to O'Bryan's debt."

The objection urged against these instructions is, that they declared, as matter of law, that the gift by Charles Kaufman to his child or son, Fritz, was fraudulent as to the debt of O'Bryan. The evidence touching this mule was, that said Charles had it in his possession before starting to Boonville, and took the same to Boonville, after the creation of the debt to O'Bryan. He claimed to have given the mule to his son sometime before, and that he delivered it to him on reaching Boonville, or about that time. If there had been any real controversy on the trial as to Charles' solvency, and his ability to give the mule to his son, in justice to his creditors, this instruction would be bad. But where there

is no actual controversy at the trial, or conflict of evidence as to a given fact, it is not error in the court to predicate on its existence a declaration of law. *Newcomb v. Blakely*, 1 Mo. App. 293. "The propriety of an instruction must be determined in reference to the facts of the case, or rather the evidence in regard to the facts." *Matthews v. St. L. Grain El. Co.*, 59 Mo. 478. It is only necessary for the court to instruct the jury upon disputed facts. *Russell v. State Ins. Co.*, 55 Mo. 594.

The evidence in this case shows clearly enough that Charles Kaufman had no other visible property. He had sold out in Moniteau county, and if he had the proceeds of that sale they were not visible or tangible. The defendant, Koontz, in his return on the writ of attachment, read in evidence, certified that the property in question did not belong to said Charles, and that he "could find no property belonging to said Charles Kaufman in my county whereon to levy." Instead of there being any show or pretense of any tangible property belonging to the said Charles, the whole evidence and effort of defendants was to show that everything tangible or visible belonged to his sons or his wife. Furthermore, the defendants asked and the court gave an instruction that virtually told the jury, that the appurtenances, etc., seized about the building were fixtures, and as such not subject to execution as personalty; and defendants' evidence was to show that of whatever character of property it was it did not belong to Charles Kaufman. Defendants now ask this court to reverse for error on account of an instruction predicated of a fact which they sought throughout the trial to establish. The solvency required by the law, essential to protect a voluntary gift "consists not only in the present ability of the debtor to pay his debts, but in such a condition of his means that payment can be enforced by process of law." *Eddy v. Baldwin*, 32 Mo. 360. It was not error, under such a state of the evidence and the matter really in dispute, to give such instructions. *Noble v. Blount*, 77 Mo. 240; *Terry v. Railroad*, 77 Mo. 256.

III.   It is finally insisted by plaintiff in error that O'Bryan should have issued execution on his judgment and essayed another levy on this property before bringing this action.   Why ask the constable again to do that which he had just refused, and is seeking in this action to prove would have been unavailing? This constable had certified on the attachment writ that this was not the property of Kaufman, and that Kaufman had no other property in the county subject to levy.   There is no pretense that any other property had come to light out of which the debt could be made.   The plaintiff had once tried this officer without avail.   The law requires no idle ceremonies.   It may be a hardship that this officer should pay this judgment.   But officers of the law must themselves obey the law.   Too vast and important are the interests of society, dependent upon the vigilance, fidelity and courage of ministerial officers for the courts to encourage in them laxity or weakness in action.   Men cannot enjoy the honors and emoluments of office without its duties and burdens.

Under the evidence and the law the judgment is for the right party and should be affirmed.   Ewing, C., concurs.   Martin, C., concurs in the result.   Hough, C. J., absent.